**<u>Exhibit 1</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 15 |
| BIOSTEEL SPORTS NUTRITION INC., | ) |
| | ) Case No. 23-90777 (DRJ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

**VERIFIED PETITION FOR (I) RECOGNITION OF A FOREIGN MAIN
PROCEEDING, (II) RECOGNITION OF THE FOREIGN REPRESENTATIVE,
AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

BioSteel Sports Nutrition Inc. (the "Foreign Debtor") is the subject of a proceeding (the "Canadian Proceeding") under the Companies' Creditors Arrangement Act (the "CCAA") in the Ontario Superior Court of Justice (the "Canadian Court") and, in its capacity as foreign representative (the "Foreign Representative"), files this verified petition (this "Verified Petition") pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of a foreign main proceeding and related relief.

In support of this Verified Petition, the Foreign Representative respectfully submits (a) the *Declaration of Sarah S. Eskandari in Support of Verified Petition for (I) Recognition of a Foreign Main Proceeding, (II) Recognition of the Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Eskandari Declaration"); and (b) the *Consolidated Statement Pursuant to Bankruptcy Code Section 1515(c) and Bankruptcy Rule 1007(a)(4)*, which is attached to the Foreign Debtor's chapter 15 petition form, and includes (i) the lists required to be filed with the chapter 15 petition form pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (ii) the statement of the Foreign Representative of the Canadian Proceeding (as defined below) required to be filed

pursuant to Bankruptcy Code section 1515(c) (together, the "Supporting Documents").  In further

support hereof, the Foreign Representative respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      On September 17, 2023 (the "Petition Date"), the Foreign Representative

commenced the Foreign Debtor's chapter 15 case by filing a form petition (the form petition,

together with this Verified Petition, the "Petition") pursuant to Bankruptcy Code sections 1504

and 1515.

2.      By the Petition, the Foreign Representative seeks entry of an order (the "Proposed

Chapter 15 Order"), substantially in the form attached hereto as **Exhibit A**, (i) recognizing the

Canadian Proceeding as a "foreign main proceeding" (as defined in Bankruptcy Code sections

1502(4) and 1517(b)(l)) and (ii) granting such other relief as is necessary and appropriate.  As set

forth in the Supporting Documents and herein:

(a)     the Foreign Debtor's proceeding, which qualifies as a "foreign main proceeding" under the Bankruptcy Code, was duly commenced in Canada;

(b)     the Foreign Representative is duly authorized to serve as a "foreign representative," as defined by Bankruptcy Code section 101(24), and to petition for relief under chapter 15 of the Bankruptcy Code in connection with the Foreign Debtor's proceeding in Canada; and

(c)     the Foreign Representative is entitled to the relief requested in the Petition.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  The Foreign Debtor confirms its

consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by this Court in connection

with the Petition to the extent that it is later determined that this Court, absent consent, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United

States Constitution.

4.      This chapter 15 case has been properly commenced pursuant to Bankruptcy Code section 1504 by the filing of a petition for recognition of the Canadian Proceeding under Bankruptcy Code section 1515.

5.      Venue is proper pursuant to 28 U.S.C. § 1410(3).  The Foreign Debtor has property and other interests in the United States, as set forth below.

6.      The bases for the relief requested herein are Bankruptcy Code sections 105(a), 1504, 1509, 1510, 1515, 1517, 1519, 1520 and 1521.

## BACKGROUND

### A.      The Foreign Debtor

7.      The Foreign Debtor is one of three affiliated entities comprising BioSteel, a sports nutrition and hydration company, focused on high quality ingredients and with a presence in professional sports markets.  Eskandari Declaration at ¶ 5.  BioSteel products, including ready-to-drink sports drinks ("RTDs"), hydration mixes and supplements, are available at retailers across Canada, the United States and online.  Eskandari Declaration at ¶ 5.

8.      The Foreign Debtor, along with BioSteel Sports Nutrition USA LLC ("BioSteel US") and BioSteel Manufacturing LLC ("BioSteel Manufacturing" and, collectively, with the Foreign Debtor and BioSteel US, "BioSteel"), operate the BioSteel business.[1]  Eskandari Declaration at ¶ 6.  BioSteel US and BioSteel Manufacturing are Delaware limited liability companies and were created to support the expansion of the BioSteel business.  Eskandari Declaration at ¶ 6.  The three entities, on an integrated basis, manufacture, market and distribute BioSteel products.  Eskandari Declaration at ¶ 6.

---

[1]     BioSteel US and BioSteel Manufacturing are not applicants in the Canadian Proceeding and did not file chapter 15 cases.

9.     BioSteel made significant investments in sponsorships and endorsements, including rights to "rinkside" advertisements, use of proprietary logos, athlete-centered promotions and social media participation.  Eskandari Declaration at ¶ 7.  BioSteel has partnered with, among others, the National Hockey League (the "NHL") and the National Hockey League Players Association (the "NHLPA"), certain National Basketball Association teams (including the Toronto Raptors), the Toronto Blue Jays and a number of professional athletes in various sports. Eskandari Declaration at ¶ 7.

10.     Canopy Growth Corporation ("CGC") owns more than 90 percent of the equity interests of the Foreign Debtor and indirectly owns 100 percent of the shares of BioSteel US and BioSteel Manufacturing.  Eskandari Declaration at ¶ 7.

**B.     The Foreign Debtor's Property and Activities**

11.     The Foreign Debtor was incorporated in Ontario on August 26, 2009 as BioSteel Sports Supplements Inc. under the Business Corporations Act (Ontario).  Eskandari Declaration at ¶ 9.  On October 1, 2019, the Foreign Debtor was continued under the Canada Business Corporations Act, amalgamated with 11351249 Canada Inc. (a predecessor entity that no longer exists following the amalgamation).  Eskandari Declaration at ¶ 9.  The Foreign Debtor's headquarters are in Canada, and the Foreign Debtor's registered office is 87 Wingold Avenue, Unit 1 in Toronto.  Eskandari Declaration at ¶ 9.

12.     Founded in Canada, BioSteel's packaging confirms it is a "proudly Canadian company," and historically, the BioSteel business was conducted entirely through the Foreign Debtor.  However, in connection with an aggressive growth strategy, the business was expanded to operate through BioSteel US and BioSteel Manufacturing.  Eskandari Declaration at ¶ 10.  In connection therewith, the Foreign Debtor contracts with BioSteel Manufacturing and third parties for the manufacture of RTDs, "Hydration Mix" and other products pursuant to proprietary

formulas owned by the Foreign Debtor. Eskandari Declaration at ¶ 10. The Foreign Debtor then sells the products directly to businesses and consumers primarily in North America, including to BioSteel US (which markets and distributes products to businesses in the United States). Eskandari Declaration at ¶ 10. The BioSteel business relies on CGC and CGC's affiliates to provide all employees required to operate the BioSteel business, including, without limitation, personnel providing administrative, legal, tax and other support. Eskandari Declaration at ¶ 10.

13.     Although certain BioSteel operations have expanded into the United States, the majority of the Foreign Debtor's assets are located in Canada. Eskandari Declaration at ¶ 11. The majority of the Foreign Debtor's creditors are in the United States and Canada. Eskandari Declaration at ¶ 11.

(1)     Products

14.     The non-commercial version of the Hydration Mix was developed in 2005 by athletes looking for a healthier sports drink. Eskandari Declaration at ¶ 12. By 2009, the Foreign Debtor was marketing its Hydration Mix for sale to professional sports teams in North America and began to gain a reputation as the hydration product of choice for high performance athletes. Eskandari Declaration at ¶ 12. BioSteel differentiates itself from competitors with a focus on nutrition and quality ingredients. BioSteel's products include:

a.     RTDs:  "Ready to Drink" 'Sports Drink' products are sugar free and gluten free, with several electrolytes.  The RTDs are packaged in an eco-friendly Tetra Pak Prisma Aseptic carton package made from renewable sources.

b.     Hydration Mix:  The powdered Hydration Mix (which is mixed with water to drink) is the Foreign Debtor's flagship product for professional sports teams. The Hydration Mix comes in eight core flavors and is available in additional "limited time" flavors.

c.     Other:  BioSteel supplements its core product lines with protein powders, sports greens and specialty nutrition powders, as well as BioSteel branded merchandise.

5

Eskandari Declaration at ¶ 12.

(2)    Production and Warehousing

15.    The Foreign Debtor owns all BioSteel intellectual property, including all rights related to the unique combination of ingredients in the quantities required to make BioSteel products and all applicable trademarks.  Eskandari Declaration at ¶ 13.

16.    Until last year, the Foreign Debtor was reliant on third-party, non-affiliate contract manufacturing organizations ("CMOs") to provide processing, manufacturing, packaging and storage services.  Eskandari Declaration at ¶ 14.  In November 2022, BioSteel Manufacturing, with equity capital provided indirectly by 11065220 Canada Inc., a subsidiary of CGC ("1106"),[2] acquired certain manufacturing assets in Verona, Virginia from Flow Beverage Corp. ("Flow"), including the lease for the manufacturing premises (the "Facility"), five production lines and access to a warehouse pursuant to related warehouse agreement.  Eskandari Declaration at ¶ 14. BioSteel Manufacturing also entered into a transition services agreement with Flow to facilitate the continued operation of the Facility.  Eskandari Declaration at ¶ 14.  This acquisition allowed BioSteel to bring the production of RTDs substantially "in house" and to eliminate certain underproduction penalties that had been imposed by a CMO agreement with Flow, which penalties arose when the Foreign Debtor's production volume fell below certain thresholds.  Eskandari Declaration at ¶ 14.  Except for certain input materials supplied by the CMOs, the Foreign Debtor owns all of the inputs into the manufacturing process and all of the semi-finished and finished products.  Eskandari Declaration at ¶ 14.

17.    When the Facility cannot meet BioSteel's RTD product demand, production of RTDs is supplemented through a CMO facility located in Aurora, Ontario.  Eskandari Declaration

---

[2]    1106 is a subsidiary of CGC, as set forth in the organizational chart attached as Exhibit C to the Foreign Debtor's chapter 15 petition form.

at ¶ 15. The Foreign Debtor's Hydration Mix and other products are produced for the Foreign Debtor by third parties. Eskandari Declaration at ¶ 15.

18.    The Foreign Debtor has also entered into agreements with third party warehousing and logistics providers in Canada and the United States, specifically in California, Colorado, Missouri, Pennsylvania, Texas and Virginia, to store finished products before they are sold and distributed. Eskandari Declaration at ¶ 16. As of September 12, 2023, there is more than $30 million CAD of the Foreign Debtor's product, on a retail value basis, in the possession of third party warehousing and logistics providers in the United States. Eskandari Declaration at ¶ 16.

(3)    Sales and Distribution

19.    BioSteel products are sold in thousands of physical stores in Canada and the United States. Eskandari Declaration at ¶ 17. The primary distribution channels include food, drug and mass retailers, convenience stores, gas stations and specialty fitness retailers. Eskandari Declaration at ¶ 17. The Foreign Debtor also conducts sales through online platforms such as Amazon and its own website. Eskandari Declaration at ¶ 17. A small portion of BioSteel's product is also sold directly to sports teams. Eskandari Declaration at ¶ 17. The Foreign Debtor was responsible for all of BioSteel's sales outside of Canada and the United States, but as of summer 2023, the Foreign Debtor began the process of deprioritizing sales outside of Canada and the United States. Eskandari Declaration at ¶ 17.

20.    BioSteel has entered into sales and distribution contracts with distributors, who are, in certain cases, granted exclusive control over specific territories, as well as large retailers. Eskandari Declaration at ¶ 18.

21.    In connection with BioSteel's expansion into the United States, an affiliate of CGC formed BioSteel US in 2020. Eskandari Declaration at ¶ 19. Since its formation, BioSteel US has entered into distribution agreements and retail sale agreements for the sale of BioSteel products to

7

businesses in the United States.  Eskandari Declaration at ¶ 19.  BioSteel US fulfills business customer purchase orders by way of a supply and distribution agreement between the Foreign Debtor and BioSteel US.  Eskandari Declaration at ¶ 19.  Pursuant to that agreement, the Foreign Debtor provides all order processing, shipping and billing services and BioSteel US acquires title immediately before the sale to its customer.  Eskandari Declaration at ¶ 19.  The terms of BioSteel US's agreement with the Foreign Debtor provide that the Foreign Debtor will accept returns of product sold by BioSteel US, and therefore, such returns are delivered to, and processed by, the Foreign Debtor.  Eskandari Declaration at ¶ 19.

(4)     Sponsorship and Marketing[3]

22.     BioSteel has successfully leveraged its connections with professional athletes and sports organizations into endorsement and marketing opportunities and has historically focused a significant portion of its marketing spend on athlete endorsements.  Eskandari Declaration at ¶ 20.

23.     The Sponsorship Agreements were generally entered into by the Foreign Debtor; however, once formed, BioSteel US also entered into certain of these agreements.  Eskandari Declaration at ¶ 21.  The Foreign Debtor has entered into agreements with professional sports teams such as the Toronto Raptors, athletic organizations such as the NHL and the NHLPA, and individual professional athletes.  Eskandari Declaration at ¶ 21.  These Sponsorship Agreements provide for, among other things, sponsored posts on athletes' social media accounts, athlete appearances in marketing campaigns, in-game and in-arena branding and the rights to use certain trademarks, including logos, in advertising campaigns.  Eskandari Declaration at ¶21.

24.     BioSteel's Sponsorship Agreement with the NHL and NHLPA is the business's most significant sponsorship commitment.  Eskandari Declaration at ¶ 22.  Both the Foreign

---

[3]     BioSteel's sponsorship and endorsement contracts described in this Verified Petition are collectively referred to as the "Sponsorship Agreements."

Debtor and BioSteel US have signed the Sponsorship Agreement with the NHL and NHLPA, as well as certain related agreements for the services of specific NHL players. Eskandari Declaration at ¶ 22. Pursuant to the terms of the NHL Sponsorship Agreement, BioSteel, among other things, gains the right to: (a) use NHL and NHLPA trademarks (such as the NHL name and shield logo); (b) camera-visible rinkside marketing of the BioSteel brand during the NHL regular season and playoffs through multimedia broadcasts of games (including television); and (c) the representation by the NHL that BioSteel is the "Official Hydration Partner of the NHL and NHLPA" for a term of eight (8) years, ending in June 2030. Eskandari Declaration at ¶ 22. The most recent payment under the NHL Sponsorship Agreement was due on September 1, 2023. BioSteel did not remit the payment to the NHL when due. Eskandari Declaration at ¶ 22.

25. BioSteel also has product placement and other marketing agreements with sports agencies, health clubs/gyms and sports arenas. Eskandari Declaration at ¶ 23. Among other things, these agreements provide for BioSteel product placement or exclusive placement in facilities and the use of BioSteel products in various types of media. Eskandari Declaration at ¶ 23. In addition, BioSteel also enters into traditional promotion and marketing contracts with retailers, offering discounts, incentives for improved in-store placement and rebates for volume purchases. Eskandari Declaration at ¶ 23.

26. Given the Foreign Debtor's financial distress and the lack of revenue driven by certain of these Sponsorship Agreements, the Foreign Debtor (and where applicable, BioSteel US) ceased making certain payments under the Sponsorship Agreements starting in the spring of 2023. Eskandari Declaration at ¶ 24. Certain of the counterparties have delivered notices of default and/or termination. Eskandari Declaration at ¶ 24.

27.     The estimated upcoming payments that are scheduled to come due under the Sponsorship Agreements between October 1, 2023 and March 31, 2024 total approximately $12 million CAD in the aggregate (excluding amounts that are already past due).  Eskandari Declaration at ¶ 25.  The Foreign Debtor does not intend to use the services of the counterparties on a go-forward basis and does not intend to make the upcoming payments due under the contracts. Eskandari Declaration at ¶ 25.

28.     To the extent that a potential buyer in the anticipated SISP (as defined below), if approved, wishes to acquire BioSteel's rights under any of the Sponsorship Agreements, the Foreign Debtor intends to work with the applicable counterparties to arrive at proposed cure amounts or other negotiated resolutions in order to transition any Sponsorship Agreements. Eskandari Declaration at ¶ 26.

(5)    <u>Intellectual Property</u>

29.     The Foreign Debtor is the owner of all intellectual property that is material to the BioSteel business, including the proprietary formulas and other information related to the production of the RTDs, Hydration Mix and powders.  Eskandari Declaration at ¶ 27.

30.     The Foreign Debtor is the owner and exclusive licensor of over a dozen trademarks (both registered and unregistered) in Canada and the United States, which include marketing campaign slogans, iterations of BioSteel's corporate name and artistic designs based upon BioSteel's corporate name.  Eskandari Declaration at ¶ 28.  The Foreign Debtor has also registered some of its trademarks outside of Canada.  Eskandari Declaration at ¶ 28.  The Foreign Debtor has no registered patents.  Eskandari Declaration at ¶ 28.

(6)    <u>Regulatory Matters</u>

31.     In Canada, BioSteel is regulated under the Food and Drugs Act (Canada) as RTDs are considered "food" under the definition in that Act.  Eskandari Declaration at ¶ 29.  The

10

Hydration Mix and powders are considered "Natural Health Products" and are governed by the Natural Health Product Regulations under the Food and Drugs Act. Eskandari Declaration at ¶ 29. In the United States, BioSteel is regulated by the U.S. Food and Drug Administration and certain state-level regulations. Eskandari Declaration at ¶ 29.

32.     BioSteel has registered its brands that use naturally occurring substances (characterized as medicinal or non-medicinal) with the Natural and Non-Prescription Health Products Directorate of Canada, an agency of Health Canada (the department of the Canadian government responsible for national health policy). Eskandari Declaration at ¶ 30. The Foreign Debtor is a site license holder from Health Canada, which gives the Foreign Debtor the authorization to manufacture, package, label and/or import natural health products. Eskandari Declaration at ¶ 30. The Foreign Debtor also holds a Safe Food for Canadians License from the Canadian Food Inspection Agency, which grants the Foreign Debtor the authority to, among other things, mix raw inputs for the manufacture of BioSteel products and package BioSteel products for export. Eskandari Declaration at ¶ 30.

(7)     <u>Employees</u>

33.     Until the co-founder's recent departure from BioSteel to form part of a potential bidding consortium, the co-founder was the only employee of the Foreign Debtor. Eskandari Declaration at ¶ 31. All other personnel providing services to BioSteel are employees of CGC or Canopy Growth USA, LLC, an indirect, wholly-owned subsidiary of CGC ("<u>Canopy USA</u>"). Eskandari Declaration at ¶ 31. CGC or Canopy USA, as applicable, pays the employees directly and remits all applicable deductions. Eskandari Declaration at ¶ 31. Pursuant to master services agreements, CGC or Canopy USA, as applicable, charges the applicable BioSteel entity for the employee-related costs. Eskandari Declaration at ¶ 31. BioSteel has significant outstanding obligations to CGC and Canopy USA for employee-related costs for the period from March 2023

11

through the date hereof. Eskandari Declaration at ¶ 31. CGC has continued to pay the employees and remit deductions. Eskandari Declaration at ¶ 31.

34.     For August 2023, the aggregate monthly cost for employees was approximately $1.7 million CAD and approximately 190 employees provided services to BioSteel on a full-time basis. Eskandari Declaration at ¶ 32. Of these employees, approximately 90 were providing services at the Facility. Eskandari Declaration at ¶ 32. The balance of the employees worked in sales, marketing and other corporate capacities. Eskandari Declaration at ¶ 32.

35.     CGC has provided notice to the Foreign Debtor that CGC and Canopy USA intend to terminate or make unavailable to the Foreign Debtor most of those employees who were previously dedicated to BioSteel. CGC has agreed to provide BioSteel with a limited number of its employees to provide certain necessary continuing services, including to assist in the SISP, if approved. Eskandari Declaration at ¶ 33.

(8)     Lease Obligations

36.     The Foreign Debtor is the tenant under a lease, dated March 2, 2018, as amended, for office space at 87 Wingold Avenue, Unit 1 in Toronto, with 87 WG Corp. as the owner of the leased property. Eskandari Declaration at ¶ 34. The Foreign Debtor has a net monthly rent obligation of $21,000.00 CAD. Eskandari Declaration at ¶ 34.

37.     In connection with the acquisition of the Facility, BioSteel Manufacturing acquired the deed of lease for real property located at 33 Lake View Court, Verona, Virginia. Eskandari Declaration at ¶ 35. The Foreign Debtor is not the tenant under the lease agreement, but it owns certain of the goods in the Facility. Eskandari Declaration at ¶ 35.

(9)     Tax Matters

38.     The Foreign Debtor remits federal goods and services taxes and harmonized sales taxes in Canada ("GST/HST") on a monthly basis. Eskandari Declaration at ¶ 36. Depending on

the sales and purchases in a specific month, the monthly remittances over the past year have varied from approximately $700,000 CAD being payable to a refund of approximately $260,000 CAD. Eskandari Declaration at ¶ 36. The Foreign Debtor is registered for sales and local tax purposes in certain states within the United States, with sales tax obligations of the Foreign Debtor on a quarterly basis estimated at approximately $6,000.00, but which vary based upon sales. Eskandari Declaration at ¶ 36.

39. While BioSteel currently has no employees, it has one former employee on salary continuation and therefore remits payroll and source deductions in Canada for such former employee. Eskandari Declaration at ¶ 37.

### C. Litigation

40. In the ordinary course of business, BioSteel is involved in litigation regarding, among other things, contract disputes and consumer protection matters.

41. In particular, the Foreign Debtor is the defendant in a putative consumer class action filed in the United States District Court for the Eastern District of New York, on January 27, 2023, by plaintiff Laura Bedson on behalf of all consumers who purchased BioSteel RTDs in the Blue Raspberry, Peach Mango, White Freeze, Mixed Berry and Rainbow Twist flavors. *See Bedson v. BioSteel Sports Nutrition Inc.*, Case No. 23-00620 (E.D.N.Y. June 12, 2023) [Docket Nos. 1, 22]. The complaint alleges: (a) the Foreign Debtor misled consumers in its marketing of the RTDs under applicable New York law and (b) BioSteel's RTD products contain per- and polyfluoralkyl substances known as "PFAS." *See id.* The Foreign Debtor moved to dismiss the complaint, and the plaintiff has refiled an amended complaint, which the Foreign Debtor has further sought to dismiss pursuant to rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. *See Bedson v. BioSteel Sports Nutrition Inc.*, Case No. 23-00620 (E.D.N.Y. June 12, 2023) [Docket Nos. 21, 25, 26].

**D.** **The Foreign Debtor's Capital Structure, Cash Management System and Intercompany Obligations**

(1)    Secured Indebtedness

42.    Since 2019, the Foreign Debtor's operations have been funded, in large part, by a secured loan and a credit facility (the "Secured Financing Facility").  Eskandari Declaration at ¶ 41.  Specifically, the Foreign Debtor entered into the tenth amended and restated loan agreement (the "BioSteel Loan Agreement"), dated as of July 13, 2023, among the Foreign Debtor, as borrower, CGC and 1106, each as a lender (together, the "Lenders") and CGC, in its capacity as agent for and on behalf of the Lenders (in such capacity, the "Agent").  Eskandari Declaration at ¶ 41.  The previous amendments and restatements to the BioSteel Loan Agreement have, among other things, increased the size and/or added additional tranches of funding available as part of a revolving facility and provided the Foreign Debtor with the ability to borrow in U.S. dollars. Eskandari Declaration at ¶ 41.

43.    Pursuant to the BioSteel Loan Agreement, the Lenders established the Secured Financing Facility in favor of the Foreign Debtor.  Eskandari Declaration at ¶ 42.  The Secured Financing Facility is comprised of the following tranches:

a.    A non-revolving tranche with a maximum amount of $4,500,000 CAD ("Tranche A");

b.    A revolving tranche with a maximum amount of $15,000,000 CAD ("Tranche B");

c.    A revolving tranche with a maximum amount of $60,000,000 CAD ("Tranche C");

d.    A revolving tranche with a maximum amount of $70,000,000 CAD ("Tranche D");

e.    A revolving tranche with a maximum amount of $200,000,000 CAD ("Tranche E"); and

f.   A revolving tranche with a maximum amount of $40,000,000 CAD ("Tranche F" and together with Tranche B, Tranche C, Tranche D and Tranche E, the "Other Tranches").

Eskandari Declaration at ¶ 42.  Under the terms of the BioSteel Loan Agreement, Tranche A is a non-revolving loan facility and amounts repaid thereunder cannot be reborrowed.  Eskandari Declaration at ¶ 42.  The Other Tranches comprise revolving loan facilities and any amount advanced thereunder can be advanced again following its repayment.  Eskandari Declaration at ¶ 42.  Interest that accrued and continues to accrue on the amounts owing under the Secured Financing Facility, which is to be paid quarterly in arrears, was historically paid through incremental quarterly draws on the Secured Financing Facility.  However, no payments have been made in respect of interest that has accrued after December 31, 2022.  Eskandari Declaration at ¶ 42.

44.   The obligations of the Foreign Debtor under the BioSteel Loan Agreement are secured by a tenth amended and restated general security agreement dated as of July 13, 2023 (the "Security Agreement").  Eskandari Declaration at ¶ 43.  Pursuant to the Security Agreement, the Foreign Debtor granted to the Agent, for its own benefit and as agent for each of the Lenders, a security interest in all right, title and interest in and to all real and personal property that is or hereafter owned by the Foreign Debtor or in which the Foreign Debtor has or hereafter acquires any interest or rights of any nature whatsoever, subject to customary limited exclusions.  Eskandari Declaration at ¶ 43.

45.   As of July 31, 2023, the Foreign Debtor owed CGC the principal amount of $69,729,929.65 CAD, plus accrued and unpaid interest of $5,122,161.77 CAD and owed 1106 the principal amount of $218,452,976.56, plus accrued and unpaid interest of $16,336,604.82.  Eskandari Declaration at ¶ 44.

15

### (2)   Unsecured Indebtedness

46.   In addition to approximately $4.6 million CAD owing to CGC and its affiliates on an unsecured basis, the Foreign Debtor has unsecured trade liabilities of approximately $40.4 million CAD related to, among other things, the Sponsorship Agreements, marketing costs, warehousing, storage and materials supplied to CMOs for production.  Eskandari Declaration at ¶ 45.

### (3)   Cash Management and Intercompany Transfers

47.   The Foreign Debtor maintains four bank accounts (two at Royal Bank of Canada ("RBC"), one at TD Bank and one at M&T Bank). Eskandari Declaration at ¶ 46.  All of the accounts are in Toronto other than the M&T Bank account in the United States.  Eskandari Declaration at ¶ 46.  The Foreign Debtor also has a deposit invested in a guaranteed investment certificate with RBC in the amount of $68,750.00 CAD, which is used to support the Foreign Debtor's credit cards and in respect of which RBC has also registered a lien.  Eskandari Declaration at ¶ 46.

48.   BioSteel's collective operations are funded by advances under the BioSteel Loan Agreement to the Foreign Debtor.  Eskandari Declaration at ¶ 47.  In the ordinary course of business, the Foreign Debtor engages in intercompany transactions with BioSteel US and BioSteel Manufacturing, and BioSteel US's and BioSteel Manufacturing's sources of cash are in large part directly or indirectly dependent upon the continued operation of the Foreign Debtor.  Eskandari Declaration at ¶ 47.

### (4)   Intercompany Services

49.   The Foreign Debtor and CGC are parties to a master services agreement, which, *inter alia*, permits CGC to provide services to the Foreign Debtor on an as-needed basis, if and when requested, subject to the ability of CGC to refuse (by written notice) to provide any services.

Eskandari Declaration at ¶ 48. The services covered under the master services agreement relate to all business functions, including operations, supply chain, finance, human resources, legal, information technology, research and development, tax, treasury, corporate development, facilities, marketing and sales and corporate communications. Eskandari Declaration at ¶ 48. The agreement provides that the Foreign Debtor will reimburse third party costs incurred by CGC in the provision of services, and the Foreign Debtor is charged cost plus a markup necessary to ensure CGC earns an arm's-length return for services. Eskandari Declaration at ¶ 48.

50.     Each of BioSteel US and BioSteel Manufacturing is party to a master services agreement with Canopy USA, which mirrors the construct of the Foreign Debtor's master services agreement with CGC. Eskandari Declaration at ¶ 49.

### E.     The BioSteel Review

51.     In connection with the preparation of CGC's consolidated financial statements for the fiscal year ended March 31, 2023, CGC identified certain trends in the recording of sales by BioSteel and began an internal review (the "BioSteel Review"). Eskandari Declaration at ¶ 50. Through the BioSteel Review, CGC identified misstatements, primarily overstatements, related to the recognition of revenue, primarily related to the Foreign Debtor's business-to-business sales in markets outside of Canada and the United States. Eskandari Declaration at ¶ 50.

52.     As a result of the BioSteel Review, CGC restated its consolidated financial statements. Eskandari Declaration at ¶ 51. All individuals implicated in the revenue misstatements are no longer involved with BioSteel (other than certain individuals in their capacities as minority shareholders) and an independent director was later added to the board of directors of each of the BioSteel entities. Eskandari Declaration at ¶ 51. BioSteel continues to evaluate its claims against the former members of BioSteel's management in connection with the information uncovered during the BioSteel Review. Eskandari Declaration at ¶ 51.

17

F.      **Response to Financial Difficulties**

53.     At the end of 2022, BioSteel retained Goldman Sachs & Co. LLC ("Goldman") to conduct a broad marketing process to identify a sale or investment opportunity that would allow BioSteel to continue as a going concern, with or without CGC's involvement.  Eskandari Declaration at ¶ 52.

54.     Due to concerns identified regarding BioSteel's financial reporting (as discussed above), the sales process stalled during the BioSteel Review, and BioSteel re-examined the size of the investment required to grow the business.  Eskandari Declaration at ¶ 53.  The sales process was restarted in June 2023 with the benefit of refined financial information.  Eskandari Declaration at ¶ 53.

55.     By July 2023, Goldman had engaged with twenty-four potential buyers, of which sixteen entered into non-disclosure agreements, four were granted access to the BioSteel virtual data room and three participated in management calls.  Eskandari Declaration at ¶ 54.  No indications of interest or bids were received by the beginning of August 2023.  Eskandari Declaration at ¶ 54.

56.     In August 2023, after being advised that certain members of management were considering a management buy-out offer, a special committee of the Foreign Debtor (the "Special Committee") was formed to explore strategic alternatives for the Foreign Debtor.  Eskandari Declaration at ¶ 55.  Shortly thereafter, the relevant members of management resigned to focus their efforts on an offer.  Eskandari Declaration at ¶ 55.

57.     The Special Committee retained Greenhill & Co. Canada Ltd. ("Greenhill") to explore alternative strategies to maximize the value of the BioSteel brand.  Eskandari Declaration at ¶ 56.  Greenhill designed and launched a refreshed marketing process to identify proposals for a transaction or investment in BioSteel.  Eskandari Declaration at ¶ 56.  Greenhill contacted the

parties who had previously been contacted in Goldman's process, along with other industry and financial parties. Eskandari Declaration at ¶ 56. Greenhill's process letter established September 5, 2023 as the deadline to submit proposals. Eskandari Declaration at ¶ 56. During Greenhill's process, twenty parties executed NDAs, and eighteen were granted access to the virtual data room and undertook diligence. Eskandari Declaration at ¶ 56.

58. On September 5, 2023, six preliminary, non-binding proposals were received. Eskandari Declaration at ¶ 57. However, all of the proposals were highly conditional and required significant time to complete, among other things, due diligence before the parties could make a determination about whether to submit a binding bid. Eskandari Declaration at ¶ 57. Importantly, none of the parties that submitted proposals fully committed to providing the financing necessary to meet BioSteel's immediate operating needs through the completion of their respective diligence periods. Eskandari Declaration at ¶ 57.

59. On September 13, 2023, CGC informed the Foreign Debtor that neither it nor its affiliates intended to make any further cash or shared services investment in BioSteel's business and at the same time, CGC demanded repayment under the Secured Financing Facility. Without ongoing financial and services support from CGC or its affiliates, the Foreign Debtor cannot meet its obligations as they come due. Eskandari Declaration at ¶ 58. As a result, the Special Committee determined that it was in the Foreign Debtor's best interest to conserve cash, put the business into hibernation and seek protection under the CCAA to allow the Foreign Debtor to maximize value for stakeholders through a court-supervised sales process and to seek recognition of that CCAA proceeding in the United States. Eskandari Declaration at ¶ 58.

60.     As a result, the Special Committee determined that commencing the Canadian Proceeding and this chapter 15 case would provide the best opportunity to maximize the value of BioSteel for all stakeholders.  Eskandari Declaration at ¶ 59.

### G.     The Canadian Proceeding

61.     On September 14, 2023, the Foreign Debtor commenced the Canadian Proceeding in the Canadian Court pursuant to the CCAA with the anticipation of building on the extensive sale processes conducted over the past several months to identify the best and highest offer for the Foreign Debtor's assets through a sale and investment solicitation process (the "SISP").  Eskandari Declaration at ¶ 60.  The Canadian Court will consider whether to approve the SISP at the comeback hearing scheduled for September 21, 2023.  CCAA Order, ¶ 40.

62.     On September 14, 2023, the Canadian Court entered an order (as may be amended or amended and restated, the "CCAA Order"), which expressly authorized the Foreign Representative to seek recognition of the Canadian Proceeding in the United States to aid and assist the Canadian Court in carrying out the terms of the CCAA Order.  CCAA Order, ¶ 42.  Additionally, the CCAA Order approves, among other things:

> a.     a stay of all proceedings and remedies taken or that may be taken in respect of any of the BioSteel entities or affecting the Foreign Debtor's business and future assets, undertakings and property (the "Stay of Proceedings"); and
>
> b.     the Foreign Debtor acting as the Foreign Representative for purposes of having the Canadian Proceeding recognized in the United States.

CCAA Order, ¶¶ 12-14.  At the comeback hearing, the Foreign Debtor will seek entry of (x) an order approving a SISP for BioSteel and (y) an amended and restated CCAA Order that, among other things, extends the Stay of Proceedings approved in the CCAA Order.  Eskandari Declaration at ¶ 62.

63.     The Foreign Debtor commenced this chapter 15 case to facilitate the fair and efficient administration of the Canadian Proceeding and protect and maximize the value the Foreign Debtor's assets.  Eskandari Declaration at ¶ 63.  Specifically, this chapter 15 case will help provide the Foreign Debtor with the breathing room and protection necessary to build off its prepetition marketing process through the anticipated SISP.  Eskandari Declaration at ¶ 63.  In connection therewith, the Foreign Representative is seeking, on an emergency basis, the protection of a stay in the United States, for the benefit of the Foreign Debtor and its assets within the U.S., to give the anticipated SISP the best opportunity to be successful.  Eskandari Declaration at ¶ 63.

## STATUTORY BASIS FOR RELIEF REQUESTED

64.     Chapter 15 was specifically designed to assist foreign representatives, such as the Foreign Representative, in the performance of their duties.  One of the express objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).  Here, granting recognition to the Canadian Proceeding is necessary to protect the Foreign Debtor's assets, support the anticipated SISP and provide the best prospect for a sale that maximizes value for all stakeholders.  Without recognition of the Canadian Proceeding and the benefits that flow therefrom, the Canadian Proceeding could be frustrated by parties exercising control over the Foreign Debtor's assets in the United States or the pursuit of claims against the Foreign Debtor, both of which would divert the Foreign Debtor's limited resources away from achieving a value-maximizing sale.

65.     The Petition satisfies all of the requirements set forth in Bankruptcy Code section 1515.  Moreover, the relief requested by the Foreign Representative is well within the scope of chapter 15 of the Bankruptcy Code, which authorizes this Court to:  (a) recognize a "foreign proceeding" upon the proper commencement of a case under chapter 15 by a "foreign

representative;" and (b) grant assistance in the United States to such foreign representative in connection with the foreign proceeding. Further, the relief requested herein is necessary and appropriate under chapter 15 and is consistent with the goals of international cooperation and assistance to foreign courts, embodied in chapter 15.

## I.     The Foreign Debtor is Eligible for Chapter 15 Relief.

### A.     A Debtor with Any Property in the United States Satisfies Bankruptcy Code Section 109(a)'s Requirement.

66.     Bankruptcy Code section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. § 109(a). Bankruptcy Code sections 103(a)(1) makes section 109 applicable in chapter 15 cases, and courts have applied Bankruptcy Code section 109(a) to determine chapter 15 eligibility. 11 U.S.C. §103(a)(1); s*ee, e.g.*, *Drawbridge Special Opportunities Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013). Decisions interpreting Bankruptcy Code section 109(a) as applied to foreign debtors under other chapters unanimously hold that a debtor satisfies this Bankruptcy Code section 109 requirement even when a debtor only has a nominal amount of property in the United States. *See GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that courts have repeatedly found that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings) (citing *In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003) (citation omitted)). Effectively, if a debtor has any property in the United States, then Bankruptcy Code section 109(a) is satisfied.

67.     The Foreign Debtor satisfies Bankruptcy Code section 109(a) because it has property throughout the United States in the form of BioSteel product in warehouses throughout

the United States, including in California, Colorado, Missouri, Pennsylvania, Texas and Virginia, and at the Facility. Eskandari Declaration at ¶ 16. Additionally, the Foreign Debtor has an interest in certain funds deposited with its U.S. counsel, Akin Gump Strauss Hauer & Feld LLP, held on account in Houston, Texas, as an undrawn retainer for services.[4] Eskandari Declaration at ¶ 46.

68. Accordingly, the Foreign Debtor's assets and contacts throughout the U.S. provide the basis for jurisdiction by satisfying the requirements under Bankruptcy Code section 109(a).

## II. The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding.

69. Bankruptcy Code section 1517(a) provides that, after notice and hearing, a court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if: (1) such foreign proceeding is a foreign main proceeding within the meaning of Bankruptcy Code section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of Bankruptcy Code section 1515. *See* 11 U.S.C. § 1517. As explained below, the Canadian Proceeding, the Foreign Representative and the Petition satisfy the foregoing requirements.

### A. The Canadian Proceeding is a Foreign Proceeding.

70. Bankruptcy Code section 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

---

[4]     Courts have ruled that a retainer held by a foreign representative's United States counsel is alone sufficient property to meet Bankruptcy Code section 109(a)'s requirement. *See, e.g., In re Culligan Ltd.*, Case No. 20-12192 [Docket No. 58] (Bankr. S.D.N.Y. July 2, 2021) (finding that undrawn attorney retainers alone satisfy the requirement under Bankruptcy Code section 109); *see also In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (finding that a bank account alone was sufficient to meet the requirement under Bankruptcy Code section 109); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014) ("[The bank account] satisfied the express requirements for eligibility under section 109(a) to permit the [debtors] to file the Chapter 15."); *In re McTague*, 198 B.R. 428, 431-32 (Bankr. W.D.N.Y. 1996) (finding that $194 in a bank account was alone sufficient to meet the requirement of Bankruptcy Code section 109(a)).

11 U.S.C. § 101(23). Courts have held that a "foreign proceeding" is:

    a.    a proceeding;

    b.    that has either a judicial or an administrative character;

    c.    that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;

    d.    that is located in a foreign country;

    e.    that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceeding is not actually insolvent;

    f.    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

    g.    which proceeding is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013); *In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008). The Canadian Proceeding satisfies such requirements and, therefore, qualifies as a "foreign proceeding" for purposes of Bankruptcy Code section 101(23).

    71.    *First*, the Canadian Proceeding is a proceeding commenced pursuant to the CCAA, a Canadian law that allows insolvent corporations to restructure their business and financial affairs. Eskandari Declaration at ¶ 60. All CCAA proceedings are carried out under the supervision of a Canadian court that appoints a monitor to oversee the applicant's business and financial affairs and submit reports to the Canadian court. Eskandari Declaration at ¶ 60. For purposes of chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." *In re Betcorp*,

400 B.R. at 278. Because the Canadian Proceeding operates under such a statutory framework, the proceeding satisfies the first factor of Bankruptcy Code section 101(23).

72. *Second*, the Canadian Proceeding is judicial in character. Proceedings are judicial in character whenever a court "exercises its supervisory powers." *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd,* 728 F.3d 301 (3d Cir. 2013). Here, the Canadian Proceeding is subject to the control and supervision of a foreign court, the Canadian Court. *See* CCAA Order. As set forth above, the Canadian Court imposed a stay in favor of all the BioSteel entities and their assets. *See* CCAA Order, ¶¶ 11-13. The Canadian Court supervises the Foreign Representative and has significant oversight over the Canadian Proceeding. *See* CCAA Order.

73. *Third*, the Canadian Proceeding is a collective proceeding. A proceeding is "collective" if it "considers the rights and obligations of all creditors." *In re Betcorp*, 400 B.R. at 281; *see also In re Poymanov*, 571 B.R. 24, 32-33 (Bankr. S.D.N.Y. 2017). The Canadian Proceeding is collective in nature, it takes into account the rights of the Foreign Debtor's various stakeholders and creditors and is intended to benefit creditors and shareholders collectively. Eskandari Declaration at ¶ 60.

74. *Fourth*, the Canadian Proceeding is conducted in a foreign country—Canada—and the Canadian Court is located in Ontario, Canada. *See* CCAA Order.

75. *Fifth*, the Canadian Proceeding was initiated under a law relating to insolvency or adjustment of debt, the CCAA.

76. *Sixth*, the Canadian Proceeding subjects the Foreign Debtor's assets and affairs to the supervision of the Canadian Court for the duration of the proceeding. Eskandari Declaration at ¶ 60.

77.     *Seventh*, the objective of the Canadian Proceeding is to facilitate a value-maximizing sale process for the Foreign Debtor.  Eskandari Declaration at ¶ 61.  Courts have consistently recognized CCAA proceedings as "foreign proceedings" for purposes of chapter 15 of the Bankruptcy Code.  *See, e.g.*, *In re Just Energy Group Inc.*, Case No. 21-30823 [Docket No. 82] (Bankr. S.D. Tex. Apr. 2, 2021); *In re ENTREC Corp.*, Case No. 20-32643 [Docket No. 36] (Bankr. S.D. Tex. May 29, 2020).

78.     Accordingly, the Foreign Representative submits that the Canadian Proceeding satisfies all of the criteria required under Bankruptcy Code section 101(23), and the Canadian Proceeding is a foreign proceeding entitled to recognition under chapter 15.

### B.     The Canadian Proceeding is a Foreign Main Proceeding.

79.     The Canadian Proceeding should be recognized as a "foreign main proceeding" as defined in Bankruptcy Code section 1502(4).  A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests.  11 U.S.C. § 1517(b).  The term "center of main interests" (or "COMI") is not defined in the Bankruptcy Code.  COMI, however, has been compared to a debtor's principal place of business.  *See, e.g.*, *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  Courts have identified certain factors that are relevant to the determination of a debtor's COMI, including: (a) the location of the debtor's headquarters; (b) the location of those persons or entities that actually manage the debtor; (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and (e) the jurisdiction whose law would apply to most disputes ((a) through (e), collectively the "Ran Factors").  *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1023 (5th Cir. 2010) (quoting *In*

*re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  In the absence of evidence to the contrary, a debtor's registered office is presumed to be the debtor's COMI.  11 U.S.C. § 1516(c).

80.     Here, the Foreign Debtor's registered office is 87 Wingold Avenue, Unit 1 in Toronto, and thus, Canada is presumed to be the Foreign Debtor's COMI.  Eskandari Declaration at ¶ 9.  Accordingly, the Foreign Debtor's COMI is Canada, and, as such, the Canadian Proceeding should be recognized as a foreign main proceeding.[5]

### C.     The Chapter 15 Case Has Been Commenced by a Duly Authorized Foreign Representative.

81.     Bankruptcy Code section 1517 provides that a "foreign representative" shall apply for recognition of the foreign proceeding.  Bankruptcy Code section 101(24) defines "foreign representative":

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Where the order commencing the foreign proceeding provides that the person or body is a foreign representative, Bankruptcy Code section 1516 entitles the Court to presume such.  11 U.S.C. § 1516(a) (providing that "[i]f the decision or certificate referred to in

---

[5]    Additionally, application of the Ran Factors further supports the conclusion that Canada is the Foreign Debtor's COMI.

    a.    The location of the debtor's headquarters.  The Foreign Debtor's headquarters are in Canada.  Eskandari Declaration at ¶ 9.

    b.    The location of those persons or entities that actually manage the debtor.  The people that actually manage the Foreign Debtor are located in Canada.  Eskandari Declaration at ¶ 31.

    c.    The location of the debtor's primary assets.  The majority of the Foreign Debtor's assets are located in Canada.  Eskandari Declaration at ¶ 11.

    d.    The location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case.  The majority of the Foreign Debtor's creditors are in Canada and the United States.  Eskandari Declaration at ¶ 11.

    e.    The jurisdiction whose law would apply to most disputes.  Canadian or U.S. law applies to the majority of the Foreign Debtor's business and business relationships.  Eskandari Declaration at ¶ 11.

section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume.").

82.     Here, the CCAA Order authorized the appointment of BioSteel Sports Nutrition Inc. as the Foreign Representative and authorized and empowered the Foreign Representative to act as a foreign representative to file the chapter 15 case in the United States for the purpose of having the Canadian Proceeding recognized.  CCAA Order, ¶¶ 41-42.

83.     Additionally, on September 14, 2023, the Special Committee authorized the appointment of the Foreign Representative for purposes of this chapter 15 case.  *See* Ex. B, ¶ 1. The Special Committee also authorized the Foreign Representative to commence the Canadian Proceeding and this chapter 15 case.  *See* Ex. B, ¶ 1.  Courts have held that a governing body of an entity may authorize a person to act as the entity's foreign representative in a chapter 15 proceeding.  *See, e.g.*, *In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd sub nom.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1862 (2013) (explaining that "every case cited by the parties suggests that a debtor is allowed to appoint its own foreign representative").  A copy of the resolutions appointing the Foreign Representative is attached here as **Exhibit B**.

84.     Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of Bankruptcy Code section 101(24).

**D.     The Petition Satisfies the Requirements of Bankruptcy Code Section 1515.**

85.     Pursuant to Bankruptcy Code section 1515(b), a petition for recognition must be accompanied by one of the following:

> (1)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

86.    In satisfaction of Bankruptcy Code section 1515(b), (a) attached hereto as **Exhibit B**, and incorporated herein by reference, are the Special Committee's resolutions appointing the Foreign Representative as the "foreign representative" and (b) attached hereto as **Exhibit C**, and incorporated herein by reference, is a certified copy of the CCAA Order evidencing the Canadian Proceeding and the appointment of the Foreign Representative.[6] Therefore, the Petition meets the requirements of Bankruptcy Code section 1515 in satisfaction of the first and third requirements under Bankruptcy Code section 1517(a).

87.    Because the Petition satisfies Bankruptcy Code section 1517, the Court should recognize the Canadian Proceeding in this chapter 15 case. Moreover, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, Bankruptcy Code sections 1501(a) and 1508 and further cooperation between courts to the maximum extent possible, as mandated by Bankruptcy Code section 1525(a). Accordingly, these circumstances satisfy the conditions for mandatory recognition of the Canadian Proceeding under Bankruptcy Code section 1517.

---

[6]    The Foreign Representative reserves the right to supplement this material in advance of or at the final hearing on the Petition.

## III.    Recognition of the Canadian Proceeding is not Contrary to U.S. Public Policy.

88.    A court may deny a request for any chapter 15 relief that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  Courts that have addressed the "public policy exception" in Bankruptcy Code section 1506 have noted that the exception is narrow, its application restricted to the most fundamental policies of the U.S., and a foreign judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet fundamental standards of fairness.  *See Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012); *see also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010 (holding that a U.S. bankruptcy court is not required to make an independent determination about the propriety of the acts of a foreign court but only whether its procedures meet U.S. standards of fundamental fairness).  Further, the relief granted in a foreign proceeding and the relief available in a U.S. proceeding need not be identical.  Courts have gone so far as to hold that even the absence of a jury trial right—a right embodied in the U.S. Constitution—in a foreign proceeding would not justify the court's refusal to recognize the foreign proceeding pursuant to the public policy exception.  *See In re RSM Richter Inc. v Aguilar (In re Ephedra Prods. Liab. Litig.)*, 349 B.R. 333, 335-36 (Bankr. S.D.N.Y. 2006).

89.    Here, recognition of the Canadian Proceeding and any orders issued by the Canadian Court during the pendency of the Canadian Proceeding would not be contrary to public policy so as to justify refusal to recognize the Canadian Proceeding and enforce the Canadian Court's orders.  Moreover, U.S. bankruptcy courts have routinely recognized CCAA proceedings as foreign main proceedings.  *See, e.g.*, *In re Acerus Pharms. Corp.*, Case No. 23-10111 [Docket No. 42] (Bankr. D. Del. Feb. 27, 2023); *In re Just Energy Group Inc.*, Case No. 21-30823 [Docket No. 82] (Bankr. S.D. Tex. Apr. 2, 2021); *In re Peraso Technologies Inc.*, Case No. 20-11354

[Docket No. 40] (Bankr. S.D.N.Y. July 23, 2020); *In re ENTREC Corp.*, Case No. 20-32643 [Docket No. 36] (Bankr. S.D. Tex. May 29, 2020).

## IV.     Additional Relief under Bankruptcy Code Section 1519 is Urgently Needed to Protect the Foreign Debtor's Assets.

90.     Bankruptcy Code section 1519 permits the Court to grant broad provisional relief "from the time of filing a petition for recognition until the court rules on the petition" where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." Section 1519(a) sets forth the scope of available provisional relief, which includes, among other things: "(1) staying execution against the debtor's assets" and "(3) any relief referred to in paragraph [] (7) of section 1521(a)." Section 1521(a)(7) authorizes the court, upon recognition of a foreign proceeding, to grant "any appropriate relief," including "granting any additional relief that may be available to a trustee".

91.     There is an inevitable gap between the time the petition for recognition is filed and the time the court determines whether a proceeding should be recognized. Prior to recognition, a chapter 15 debtor is not entitled automatically to the automatic stay, which, in this case, makes an order granting provisional relief necessary because a stay "is urgently needed" to protect the Foreign Debtor's assets in the United States and the interests of all creditors. 11 U.S.C. § 1519(a).

92.     A material amount of BioSteel product owned by the Foreign Debtor is currently located in nine warehouses throughout the United States, including in California, Colorado, Missouri, Pennsylvania, Texas and Virginia, and in the Facility. Eskandari Declaration at ¶ 16. Absent provisional relief in the form of an immediate stay, the Foreign Debtor faces a significant risk that one or more of the parties holding BioSteel products within the United States may decide to exercise control over the Foreign Debtor's assets or race to the courthouse to obtain and enforce a judgment against the Foreign Debtor's assets. Such actions would interfere with the

administration of the Canadian Proceeding, circumvent the Canadian Court's orders, including, among other things, the Stay of Proceedings, and jeopardize the success of the anticipated SISP. The Foreign Debtor is currently in hibernation and has limited resources; thus, maintaining the status quo and ensuring that the Foreign Debtor's assets are protected within the United States will allow the Foreign Representative to focus on a value-maximizing sale process for the benefit of all stakeholders.

93.     Additionally, this provisional relief aligns with the purpose of chapter 15—"to provide effective mechanisms for dealing with cases of cross-border insolvency" through (a) the promotion of cooperation between U.S. courts and courts of foreign countries, (b) the fair and efficient administration of cross-border insolvencies and (c) the protection and maximization of the debtor's assets. *See* 11 U.S.C. § 1501(a)(1), (3) and (4).

94.     Accordingly, by separate motion filed contemporaneously herewith, the Foreign Representative seeks provisional relief under Bankruptcy Code section 1519 and the application of the stay pursuant to Bankruptcy Code section 362 for the purpose of protecting the Foreign Debtor and its assets until the Court rules of the Foreign Debtor's chapter 15 petition.

## **RELIEF REQUESTED**

95.     The Foreign Representative respectfully requests entry of the Proposed Chapter 15 Order, (a) granting the Petition and recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to Bankruptcy Code section 1517; (b) recognizing the Foreign Representative as a "foreign representative" of the Foreign Debtor as defined in Bankruptcy Code section 101(24); (c) finding that the Petition meets the requirements of Bankruptcy Code section 1515; (d) granting all relief afforded a foreign main proceeding automatically upon recognition pursuant to Bankruptcy Code section 1520; and (e) providing that no action taken by the Foreign Representative in preparing, disseminating, applying for, implementing, or otherwise

acting in furtherance of the Canadian Proceeding, any order entered in respect of the Petition, the chapter 15 case, any further order for additional relief in this chapter 15 case or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded to the Foreign Representative, including, without limitation, pursuant to Bankruptcy Code section 1510.

## **NOTICE**

96.     The Foreign Representative has provided notice of the Petition via email and/or first class mail to:  (a) the Office of the United States Trustee; (b) the United States Attorney for the Southern District of Texas; (c) all persons or bodies authorized to administer the Canadian Proceeding; (d) all parties to litigation pending in the United States in which the Foreign Debtor is a party as of the date hereof; (e) all known vendors of the Foreign Debtor; (f) all known equity holders of the Foreign Debtor; (g) all parties against whom the Foreign Debtor, on the Petition Date, is seeking relief pursuant to Bankruptcy Code section 1519; and (h) such other parties in interest that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the relief requested, the Foreign Representative submits that no further notice is necessary.

WHEREFORE, the Foreign Representative respectfully requests entry of the Proposed Chapter 15 Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 17, 2023
Houston, Texas

/s/ Marty L. Brimmage, Jr.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (*pro hac vice* pending)
Meredith A. Lahaie (*pro hac vice* pending)
Amelia E. Danovitch (*pro hac vice* pending)
Alexandra Kane (*pro hac vice* pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
      mlahaie@akingump.com
      adanovitch@akingump.com
      kanea@akingump.com

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Rachel Biblo Block (TX Bar No. 24097382)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
      rbibloblock@akingump.com

*Counsel to the Foreign Representative*

## VERIFICATION OF PETITION

I, Sarah S. Eskandari, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the General Counsel of BioSteel Sports Nutrition Inc., the authorized foreign representative for the Foreign Debtor. As such, I have full authority to verify the foregoing Petition on behalf of the Foreign Debtor.

I have read the foregoing Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: September 17, 2023

*/s/ Sarah S. Eskandari*
By: Sarah S. Eskandari
    General Counsel
    BioSteel Sports Nutrition Inc.

**EXHIBIT A**

**Proposed Chapter 15 Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 15 |
| BIOSTEEL SPORTS NUTRITION INC. | Case No. 23-90777 (DRJ) |
| Debtor in a Foreign Proceeding. | Re: Docket No. _____ |

**ORDER GRANTING PETITION FOR (I) RECOGNITION OF A FOREIGN
MAIN PROCEEDING, (II) RECOGNITION OF THE FOREIGN REPRESENTATIVE,
AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of the Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (together with the form petition filed concurrently therewith, the "Petition"),[1] filed by the Foreign Representative as a "foreign representative" of the above-captioned foreign debtor (the "Foreign Debtor"); and upon the hearing on the Petition and this Court's review and consideration of the Petition, and the Eskandari Declaration, IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.     Venue is proper before this Court pursuant to 28 U.S.C. § 1410.  This Court may enter a final order consistent with Article III of the United States Constitution.

C.     Good, sufficient, appropriate and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative, pursuant to Bankruptcy

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Petition.

[2]     The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.

Rules 1011(b) and 2002(q), via email and/or first class mail to: (a) the Office of the United States Trustee; (b) the United States Attorney for the Southern District of Texas; (c) all persons or bodies authorized to administer the Canadian Proceeding; (d) all parties to litigation pending in the United States in which the Foreign Debtor is a party as of the date hereof; (e) all known vendors of the Foreign Debtor; (f) all known equity holders of the Foreign Debtor; (g) all parties against whom the Foreign Debtor, on the Petition Date, is seeking relief pursuant to Bankruptcy Code section 1519; and (h) such other parties in interest that have requested notice pursuant to Bankruptcy Rule 2002.

D.     No objections or other responses were filed that have not been overruled, withdrawn, or otherwise resolved.

E.     This chapter 15 case was properly commenced pursuant to Bankruptcy Code sections 1504, 1509 and 1515.

F.     The Foreign Representative is the duly appointed "foreign representative" of the Foreign Debtor as such term is defined in Bankruptcy Code section 101(24). The Foreign Representative has satisfied the requirements of Bankruptcy Code section 1515 and Bankruptcy Rule 1007(a)(4).

G.     The Canadian Proceeding is entitled to recognition by this Court pursuant to Bankruptcy Code section 1517.

H.     The Canadian Proceeding is pending in Canada, where the Foreign Debtor has its "center of its main interests" as referred to in Bankruptcy Code section 1517(b)(1). Accordingly, the Canadian Proceeding is a "foreign main proceeding" pursuant to Bankruptcy Code

section 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to Bankruptcy

Code section 1517(b)(1).

      I.      The relief granted hereby is necessary to effectuate the purposes and objectives of

chapter 15 and to protect the Foreign Debtor and its interests.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION
AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

      1.      The Petition is granted.

      2.      The Canadian Proceeding is recognized as a foreign main proceeding pursuant to

Bankruptcy Code section 1517, and all the effects of recognition as set forth in Bankruptcy Code

section 1520 shall apply.

      3.      Upon entry of this order (this "Order"), the Canadian Proceeding and all prior

orders of the Canadian Court shall be and hereby are granted comity and given full force and effect

in the United States and, pursuant to Bankruptcy Code section 1520, among other things:

      a.      the protections of Bankruptcy Code sections 361 and 362 apply to the
Foreign Debtor;

      b.      all persons and entities are enjoined from seizing, attaching and enforcing
or executing liens or judgments against the Foreign Debtor's property in the
United States or from transferring, encumbering or otherwise disposing of
or interfering with the Foreign Debtor's assets or agreements in the United
States without the express consent of the Foreign Representative; and

      c.      all persons and entities are enjoined from commencing or continuing,
including the issuance or employment of process of, any judicial,
administrative, or any other action or proceeding involving or against the
Foreign Debtor or its assets or proceeds thereof, or to recover a claim or
enforce any judicial, quasi-judicial, regulatory, administrative or other
judgment, assessment, order, lien or arbitration award against the Foreign
Debtor or its assets or proceeds thereof.

      4.      The Foreign Representative is hereby established as the representative of the

Foreign Debtor with full authority to administer the Foreign Debtor's assets and affairs in the

United States.

5.      The Foreign Representative and the Foreign Debtor and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or the Bankruptcy Local Bankruptcy Rules of this Court.

6.      No action taken by the Foreign Representative or the Foreign Debtor or their respective successors, agents, representatives, advisors or counsel in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of or in connection with the Canadian Proceeding, this Order, this chapter 15 case or any adversary proceeding herein, or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including, without limitation, pursuant to Bankruptcy Code section 1510.

7.      The banks and financial institutions with which the Foreign Debtor maintains bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Foreign Debtor's bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Foreign Debtor's bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Foreign Debtor, as the case may be.

8.      The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this chapter 15 case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

11.     This Order applies to all parties in interest in this chapter 15 case and all of their agents, employees and representatives, and all those who act in concert with them who receive notice of this Order.


Houston, Texas
Dated: _____ , 2023

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Special Committee Resolutions**

**BIOSTEEL SPORTS NUTRITION INC.**
(the "Corporation")

**CERTIFIED RESOLUTIONS OF THE DIRECTORS**

I, SARAH S. ESKANDARI, General Counsel of the Corporation, do hereby certify, for and on behalf of the Corporation, and not personally, that attached as Schedule "A" is a true and complete copy of the resolutions of the Special Committee of the Board of Directors (the "**Resolutions**"), which was duly adopted at a meeting of the said Committee on September 14, 2023. The Resolutions are in full force and effect and are the only resolutions, approval or similar authorization of the Directors of the Corporation specifically dealing with this subject matter.

The undersigned acknowledges that this Certificate may be relied on when delivered by electronic facsimile or portable document format (PDF).

DATED September 15, 2023

*Sarah Eskandari*
Sarah S. Eskandari
General Counsel

- 2 -

Schedule "A"

**RESOLUTION OF THE SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
BIOSTEEL SPORTS
NUTRITION INC.
(the "Company")**

**WHEREAS** the Special Committee of the Board of Directors of the Company (the "**Committee**") has received presentations from its investment banker, Greenhill & Co. ("**Greenhill**") and its financial advisor, KSV Restructuring Inc. ("**KSV**") including current financial statements, and a 13 week cash flow analysis which demonstrate that the Company is insolvent and that its current operations do not generate adequate liquidity to operate its business in the ordinary course;

**AND WHEREAS** the Company is dependent upon funding and services from Canopy Growth Corporation ("**Canopy**") and its affiliates in the amount of approximately $15 million per month in order to operate its business as a going concern;

**AND WHEREAS** on September 13, 2023 Canopy notified the Company that it and its affiliates are no longer willing to provide funding or services to the Company to allow it to continue to conduct business as a going concern and demanded repayment of all amounts owing pursuant to the tenth amended and restated credit agreement dated as of July 13, 2023 between Canopy and 11065220 Canada Inc., as lenders, and the Company, as borrower, with an outstanding balance in the aggregate of over $356 million;

**AND WHEREAS** the Company has, through an extensive market canvass conducted by Greenhill, received a number of non-binding expressions of interest in the acquisition of all or a portion of the Company's assets, property and undertaking and believes that such expressions of interest are such that one or more of them are reasonably likely to result in a transaction that will provide value and recovery to the Company's creditors; however, none of the parties who have provided such expressions of interest are prepared complete a transaction on an expedited basis or to provide funding to allow the Company to continue to conduct business as a going concern while the terms of a transaction are negotiated;

**AND WHEREAS** the Committee, under the terms of its mandate, is required to develop and implement a comprehensive strategy to deal with the financial challenges facing the Company, and has full authority to implement a strategy that may include, without limitation, a restructuring of the Company or its affiliates pursuant to the *Companies Creditors Arrangement Act* and/or proceedings commenced under the United States Bankruptcy Code;

**AND WHEREAS** Mr. Casley, a member of the Committee, is an employee of Canopy, the Company's principal source of funding and creditor, and in order to avoid any actual or apparent conflict of interest arising from such roles, has elected to recuse himself from voting on any resolution of the Committee that would authorize the Company to seek protection from its creditors;

**AND WHEREAS** the Committee has determined that, in light of the Company's current financial situation, action should be taken to stabilize and preserve the value of the Company's assets in order to provide an opportunity to negotiate a sale of all or substantially all of the Company's assets or complete another form of restructuring;

**AND WHEREAS** the Committee has determined it is in the best interests of the Company to immediately cease to conduct business as a going concern and to commence insolvency

proceedings under the *Companies' Creditors Arrangement Act* ("**CCAA**") and ancillary proceedings under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") to stabilize and preserve the value of the Company's assets in order to implement a sale of all or substantially all of the assets, property and undertakings of the Company, or a restructuring transaction of a different nature;

## NOW THEREFORE BE IT RESOLVED THAT:

1.      The Company be and is hereby authorized to, immediately:

   a.   cease to conduct business as a going concern on a temporary or permanent basis;

   b.   apply to the Ontario Superior Court of Justice (Commercial List) (the "**Court**") for an order under the CCAA providing, among other things, for protection from its creditors, for the appointment of KSV as monitor of the assets, business, and affairs of the Company and for a stay of all proceedings and remedies taken or that might be taken in respect of the Company and its affiliates, the Monitor or the current or future directors and/or officers of the Company and its affiliates (the "**CCAA Proceedings**") ;

   c.   enter into any related proceedings, including any proceeding under the *Bankruptcy and Insolvency Act* (Canada) and chapter 15 of the Bankruptcy Code (these related proceedings and the CCAA Proceedings, collectively the "**Insolvency Proceedings**"),

   d.   to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on its behalf) all necessary documents and carry out all actions necessary to the appointment of the Company as the foreign representative in respect of the CCAA Proceedings for purposes of having the CCAA Proceedings recognized and approved under chapter 15 of the Bankruptcy Code.

2.      Cassels Brock & Blackwell LLP, Canadian counsel for the Company, and Akin Gump Strauss Hauer and Feld LLP ("**Akin**"), U.S, Counsel to the Company, are hereby authorized to act as counsel to the Company in connection with the Insolvency Proceedings and to serve and file such documents as are required on the Company's behalf in connection with the Insolvency Proceedings.

3.      The Company is authorized to pay the proposed Court-appointed Monitor, KSV, and its counsel, Bennett Jones, LLP, on such terms and conditions as the Court shall approve.

4.      Any one officer or director of the Company, Tom Stewart, Sarah S. Eskandari and any other persons performing services on behalf of the Company, be and is hereby authorized for and on behalf of the Company to execute, under the corporate seal or otherwise, and to deliver in the name of the Company, the documents required by the Company and contemplated in respect of the Insolvency Proceedings, and such other documentation or information required of the Company in such form and with such alterations, amendments or deletions as may be approved by the said person and the signature of the said person on behalf of the Company shall be conclusive evidence of the approval of such alterations, amendments, additions and the documents so executed shall be the documents authorized by this resolution.

5.      Any one officer or director of the Company, be and is hereby authorized for and on behalf of the Company to do or cause to be done all such acts and things as may be necessary or desirable in connection with the Insolvency Proceedings or in order to give effect to the intent of this Resolution.

**<u>EXHIBIT C</u>**

**CCAA Order**

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

Court File No. CV-23-706033-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE | ) | THURSDAY, THE 14th |
|---|---|---|
| | ) | |
| JUSTICE CAVANAGH | ) | DAY OF SEPTEMBER, 2023 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF BIOSTEEL SPORTS NUTRITION INC.

(the "**Applicant**")

**INITIAL ORDER**

**THIS APPLICATION**, made by the Applicant, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), for an Initial Order was heard this day by judicial videoconference via Zoom.

**ON READING** the affidavit of Sarah S. Eskandari sworn September 13, 2023 and the Exhibits thereto (the "**Eskandari Affidavit**") and the pre-filing report dated September 13, 2023 of KSV Restructuring Inc. ("**KSV**") in its capacity as the proposed monitor, and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicant, KSV, and the other parties listed on the counsel slip and no one appearing for any other party although duly served as appears from the affidavit of service of Stephanie Fernandes sworn September 14, 2023, and on reading the consent of KSV to act as the Monitor,

**SERVICE AND DEFINITIONS**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

2.      **THIS COURT ORDERS** that capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to them in the Eskandari Affidavit.

**APPLICATION**

3.      **THIS COURT ORDERS AND DECLARES** that the Applicant is a company to which the CCAA applies.

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      **THIS COURT ORDERS** that the Applicant shall remain in possession and control of its current and future assets, licences, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the Applicant shall continue to carry on business in a manner consistent with the preservation of its business (the "**Business**") and the Property.  The Applicant is authorized and empowered to continue to retain and employ or receive the services of its employees (or employees of affiliates providing services on an intercompany basis), consultants, contractors, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

5.      **THIS COURT ORDERS** that the Applicant shall be entitled to continue to utilize the central cash management system currently in place as described in the Eskandari Affidavit or, with the prior written consent of the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**"), and that any present or future bank providing the Cash Management System shall: (i) not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicant of funds transferred, paid, collected or otherwise dealt with in the Cash Management System; (ii) be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicant, pursuant to the terms of the documentation applicable to the Cash Management System; and (iii) be, in its capacity as provider of the Cash Management System, an unaffected creditor under a plan (if any) with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS 14 DAY OF September 20 23
FAIT À TORONTO LE                JOUR DE

REGISTRAR                    GREFFIER

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

6. **THIS COURT ORDERS** that the Applicant shall be entitled but not required to pay the following expenses whether incurred prior to, on, or after the date of this Order:

(a)   in respect of employees of the Applicant, all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses payable prior to, on, or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)   with the prior written consent of the Monitor, amounts owing for goods and services actually supplied to the Applicant or its affiliates BioSteel Sports Nutrition USA, LLC ("**BioSteel US**") or BioSteel Manufacturing LLC ("**BioSteel Manufacturing**, and collectively with the Applicant and BioSteel US, the "**BioSteel Entities**" and each a "**BioSteel Entity**"), including, without limiting the foregoing, services provided by contractors, prior to the date of this Order, with the Monitor considering, among other factors, whether: (i) the supplier or service provider is essential to the Business and ongoing operations of the Applicant and the payment is required to ensure ongoing supply; (ii) making such payment will preserve, protect or enhance the value of the Property or the Business or the business or property of a US BioSteel Entity; and (iii) the supplier or service provider is required to continue to provide goods or services to the Applicant after the date of this Order, including pursuant to the terms of this Order; and,

(c)   the fees and disbursements of any Assistants retained or employed by the Applicant, at their standard rates and charges.

7. **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the Applicant shall be entitled but not required to pay all reasonable expenses incurred by the BioSteel Entities in carrying on the Business in the ordinary course after the date of this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)   all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services; and

(b)   payment for goods or services actually supplied to the BioSteel Entities, provided, however, that payment for goods or services actually supplied to the US BioSteel

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

DATED AT TORONTO THIS 14 DAY OF September 20 23

REGISTRAR

LA PRÉSENTE ATTESTE QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE À TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

FAIT À TORONTO LE

GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

Entities may only be made with consent of the Monitor, on or following the date of this Order.

8.     **THIS COURT ORDERS** that the Applicant shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of: (i) employment insurance; (ii) Canada Pension Plan; (iii) Quebec Pension Plan; and (iv) income taxes;



(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicant in connection with the sale of goods and services by the Applicant, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicant, whether in Canada, the United States, or another jurisdiction.

9.     **THIS COURT ORDERS** that until a real property lease is disclaimed in accordance with the CCAA, the Applicant shall pay, without duplication, all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease, but for greater certainty, excluding accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the Applicant or the making of this Order) or as otherwise may be negotiated between the Applicant and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, monthly in equal payments on the first day of each month, in advance (but not in arrears) or, with the prior written consent of the Monitor, at such other time intervals and dates as may be agreed to between the Applicant and landlord, in

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

the amounts set out in the applicable lease. On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

10.    **THIS COURT ORDERS** that, except as specifically permitted herein, the Applicant is hereby directed, until further Order of this Court: (i) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicant to any of its creditors as of this date; (ii) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of the Property; and (iii) to not grant credit or incur liabilities except in the ordinary course of the Business.

## NO PROCEEDINGS AGAINST THE BIOSTEEL ENTITIES, THEIR BUSINESS OR THEIR PROPERTY

11.    **THIS COURT ORDERS** that until and including September 24, 2023, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**", and collectively, "**Proceedings**") shall be commenced or continued against or in respect of the BioSteel Entities or the Monitor, or affecting the Business or the Property or the business or property of BioSteel US or BioSteel Manufacturing, except with the written consent of the Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of any of the BioSteel Entities or affecting the Business or the Property, or the business or property of BioSteel US or BioSteel Manufacturing, are hereby stayed and suspended pending further Order of this Court or the prior written consent of the Applicant and the Monitor.

## NO EXERCISE OF RIGHTS OR REMEDIES

12.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental unit, body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the BioSteel Entities or the Monitor, or their respective employees and representatives acting in such capacities, or affecting the Business or the Property or the business or property of BioSteel US or BioSteel Manufacturing, are hereby stayed and suspended except with the written consent of the Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall: (i) empower any of the BioSteel Entities to carry on any business which it is not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a security interest; or (iv) prevent the registration of a claim for lien.

THIS IS TO CERTIFY THAT THIS
DOCUMENT, EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVETUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE À TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS  14  DAY OF  September  20 23
FAIT À TORONTO LE              JOUR DE

REGISTRAR                                                      GREFFIER

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

## NO INTERFERENCE WITH RIGHTS

13.     **THIS COURT ORDERS** that during the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the BioSteel Entities, except with the prior written consent of the Applicant and the Monitor, or leave of this Court.

## CONTINUATION OF SERVICES

14.     **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with any of the BioSteel Entities or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll and benefit services, accounting services, insurance, transportation services, storage and warehousing, utility, licensing, or other services, to the Business or any of the BioSteel Entities, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by any of the BioSteel Entities or exercising any other remedy provided under the agreements or arrangements, and that each of the BioSteel Entities shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the applicable BioSteel Entities in accordance with the normal payment practices of the applicable BioSteel Entities or such other practices as may be agreed upon by the supplier or service provider and each of the Applicant and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

15.     **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicant. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

LA PRESENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS 14 DAY OF September 20 23
FAIT A TORONTO LE                JOUR DE

REGISTRAR                GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

16.     **THIS COURT ORDERS** that during the Stay Period, and except as permitted by Subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of any of the BioSteel Entities (other than a director or officer who is or was at any point a shareholder or optionholder of the Applicant) (collectively, the "**Directors and Officers**") with respect to any claim against the Directors and Officers that arose before the date hereof and that relates to any obligations of any of the BioSteel Entities whereby the Directors and Officers are alleged under any law to be liable in their capacity as the Directors and Officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicant, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicant or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

17.     **THIS COURT ORDERS** that the Applicant shall indemnify the Directors and Officers against obligations and liabilities that they may incur as directors or officers of any of the BioSteel Entities after the commencement of the within proceeding, except to the extent that, with respect to any Director or Officer, the obligation or liability was incurred as a result of such Director's or Officer's gross negligence or wilful misconduct (the "**D&O Indemnity**").

18.     **THIS COURT ORDERS** that the Directors and Officers shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of US$1,279,000, unless permitted by further Order of this Court, as security for the D&O Indemnity provided in paragraph 17 of this Order. The Directors' Charge shall have the priority set out in paragraphs 29 and 31 hereof.

19.     **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary: (i) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge; and (ii) the Directors and Officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 17 of this Order.

## APPOINTMENT OF MONITOR

20.     **THIS COURT ORDERS** that KSV is hereby appointed pursuant to the CCAA as Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicant with

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

the powers and obligations set out in the CCAA or set forth herein and that the Applicant and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicant pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

21.      **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)      monitor the Applicant's receipts and disbursements;

(b)      report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceeding herein;



         assist the Applicant in the preparation of its cash flow statements;

         monitor all payments, obligations and transfers as between the Applicant and its affiliates;

(e)      have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicant, to the extent that is necessary to adequately assess the Applicant's business and financial affairs or to perform its duties arising under this Order;

         be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(g)      assist the Foreign Representative (as defined below) and its legal counsel as may be required to give effect to the terms of this Order; and

(h)      perform such other duties as are required by this Order or by this Court from time to time.

22.      **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or the Property, or any part thereof.

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

23.     **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

24.     **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Applicant with information provided by the Applicant in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicant is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicant may agree.

25.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the Monitor under the CCAA or as an officer of this Court, the Monitor, its directors, officers, employees, legal counsel and other representatives acting in such capacities shall incur no liability or obligation as a result of the Monitor's appointment or the carrying out by it of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part.  Nothing in this Order shall derogate from the protections afforded to the Monitor by the CCAA or any applicable legislation.

26.     **THIS COURT ORDERS** that the Monitor, legal counsel to the Monitor, legal counsel to the Applicant and the Special Committee shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on or subsequent to the date of this Order, by the Applicant as part of the costs of this proceeding. The Applicant is hereby

THIS IS TO CERTIFY THAT THIS
DOCUMENT, EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

LA PRESENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVETUE DU
SCEAU DE LA COUR SUPERIEURE
DE JUSTICE A TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS 14 DAY OF September 20 23
FAIT A TORONTO LE         JOUR DE

REGISTRAR                    GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

authorized and directed to pay the accounts of the Monitor, legal counsel for the Monitor and legal counsel for the Applicant on a bi-weekly basis.

27.     **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

## ADMINISTRATION CHARGE

28.     **THIS COURT ORDERS** that the Monitor, legal counsel to the Monitor, legal counsel to the Applicant and the Special Committee, and Greenhill & Co. Canada Ltd. (the "**Financial Advisor**") in respect of its Monthly Advisory Fee (as defined by the Greenhill Engagement Letter) shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of US$750,000 unless permitted by further Order of this Court, as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel or advisors, both before and after the making of this Order in respect of this proceeding. The Administration Charge shall have the priority set out in paragraphs 29 and 31 hereof.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

29.     **THIS COURT ORDERS** that the priorities of the Administration Charge, the Directors' Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of US$750,000); and
>
> Second – Directors' Charge (to the maximum amount of US$1,279,000).

30.     **THIS COURT ORDERS** that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

31.     **THIS COURT ORDERS** that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person notwithstanding the order of perfection or attachment; provided that the Charges shall rank behind Encumbrances in favour of any Person that has not been served with notice of the application for this Order. The

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

Applicant and the beneficiaries of the Charges shall be entitled to seek priority of the Charges ahead of any Encumbrances over which the Charges may not have obtained priority pursuant to this Order on a subsequent motion including, without limitation, on the Comeback Hearing (as defined below), on notice to those Persons likely to be affected thereby.

32.    **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court on notice to parties in interest, the Applicant shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicant also obtains the prior written consent of the Monitor, and the beneficiaries of the Administration Charge and the Directors' Charge, as applicable, or further Order of this Court.

33.    **THIS COURT ORDERS** that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by: (i) the pendency of this proceeding and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) or receivership order(s) issued pursuant to the *Bankruptcy and Insolvency Act (Canada)* (the "**BIA**") or otherwise, or any bankruptcy order or receivership order made pursuant to such applications; (iii) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (iv) the provisions of any federal or provincial statutes; or (v) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicant, and notwithstanding any provision to the contrary in any Agreement:

(a)    the creation of the Charges shall not create or be deemed to constitute a breach by the Applicant of any Agreement to which it is a party;

(b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)    the payments made by the Applicant pursuant to this Order, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS _14_ DAY OF _September_ 20 _23_
FAIT À TORONTO LE              JOUR DE

REGISTRAR                          GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice    **Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

34.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicant's interest in such real property lease.

**SERVICE AND NOTICE**

35.    **THIS COURT ORDERS** that the Monitor shall: (i) without delay, publish in the *National Post (National Edition)*, a notice containing the information prescribed under the CCAA; and (ii) within five (5) days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a copy of the notice to every known creditor who has a claim against the Applicant of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Subsection 23(1)(a) of the *CCAA* and the regulations made thereunder.

36.    **THIS COURT ORDERS** that the E-Service Guide of the Commercial List (the "**Guide**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Guide (which can be found on the Commercial List website at https://www.ontariocourts.ca/scj/practice/practice-directions/toronto/eservice-commercial/)  shall be valid and effective service. Subject to Rule 17.05, this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the *Rules of Civil Procedure*, R.R.O. 1990. Reg. 194, as amended (the "**Rules of Civil Procedure**"). Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 13 of the Guide, service of documents in accordance with the Guide will be effective on transmission. This Court further orders that a Case Website shall be established    in    accordance    with    the    Guide    with    the    following    URL: www.ksvadvisory.com/experience/case/biosteel.

37.    **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Guide or the CCAA and the regulations thereunder is not practicable, the Applicant, the Monitor and each of their respective counsel and agents are at liberty to serve or distribute this Order, any other materials and orders in this proceeding, any notices or other correspondence, by forwarding copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile transmission or electronic message to the Applicant's creditors or other interested parties at their respective addresses (including e-mail addresses) as last shown in the books and records of the Applicant and that any such service or distribution shall be deemed to be received on the earlier of (i) the date of forwarding thereof, if sent by electronic message on or prior to 5:00 p.m. Eastern Time (or on the next business day following the date of forwarding thereof if sent on a non-

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

business day); (ii) the next business day following the date of forwarding thereof, if sent by courier, personal delivery, facsimile transmission or electronic message sent after 5:00 p.m. Eastern Time; or (iii) on the third business day following the date of forwarding thereof, if sent by ordinary mail.

38.     **THIS COURT ORDERS** that the Applicant, the Monitor and each of their respective counsel are at liberty to serve or distribute this Order, and any other materials and orders as may be reasonably required in this proceeding, including any notices or other correspondence, by forwarding true copies thereof by electronic message (including by e-mail) to the Applicant's creditors or other interested parties and their advisors, as applicable. For greater certainty, any such service or distribution shall be deemed to be in satisfaction of a legal or judicial obligation, and notice requirements within the meaning of Subsection 3(c) of the *Electronic Commerce Protection Regulations* (SOR/2013-221).

39.     **THIS COURT ORDERS** that subject to further Order of this Court in respect of urgent motions, any interested party wishing to object to the relief sought in a motion brought by the Applicant or the Monitor in this proceeding shall, subject to further Order of this Court, provide the service list in this proceeding (the "**Service List**") with responding motion materials or a written notice (including by e-mail) stating its objection to the motion and the grounds for such objection by no later than 5:00 p.m. (Eastern Time) on the date that is two (2) days prior to the date such motion is returnable (the "**Objection Deadline**"). The Monitor shall have the ability to extend the Objection Deadline after consultation with the Applicant.

**COMEBACK HEARING**

40.     **THIS COURT ORDERS** that the comeback motion in this proceeding shall be heard on September 21, 2023 (the "**Comeback Hearing**").

**FOREIGN PROCEEDINGS**

41.     **THIS COURT ORDERS** that the Applicant is hereby authorized and empowered, but not required, to act as the foreign representative (in such capacity, the "**Foreign Representative**") in respect of the within proceeding for the purpose of having this proceeding recognized and approved in a jurisdiction outside of Canada.

42.     **THIS COURT ORDERS** that the Foreign Representative is hereby authorized to apply for foreign recognition and approval of this proceeding, as necessary, in any jurisdiction outside of Canada, including in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

**GENERAL**

43.     **THIS COURT ORDERS** that any interested party (including the Applicant) may apply to this Court to vary or amend this Order on not less than five (5) calendar days' notice to the Service List and any other party or parties likely to be affected by the Order sought; provided, however, that the Chargees shall be entitled to rely on this Order as granted and on the Charges and priorities set forth in paragraphs 29 and 31 hereof with respect to any fees, expenses and disbursements incurred, as applicable, until the date this Order may be amended, varied or stayed.

44.     **THIS COURT ORDERS** that, notwithstanding paragraph 43 of this Order, the Applicant or the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of its powers and duties hereunder or in the interpretation of this Order.

45.     **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicant, the Business or the Property.

46.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the BioSteel Entities, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the BioSteel Entities and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the BioSteel Entities and the Monitor and their respective agents in carrying out the terms of this Order.

47.     **THIS COURT ORDERS** that each of the Applicant and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceeding for the purpose of having this proceeding recognized in a jurisdiction outside Canada.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE.

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVETUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS __14__ DAY OF __September__ 20 __23__
FAIT À TORONTO LE ____ JOUR DE

REGISTRAR                                    GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00706033-00CL

48.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 8:00 a.m. (Eastern Time) on the date of this Order without the need for entry or filing.

Digitally signed by
Peter Cavanagh

THIS IS TO CERTIFY THAT THIS
DOCUMENT, EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVETUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE A TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVE DANS CE BUREAU

DATED AT TORONTO THIS __14__ DAY OF __September__ 20 __23__
FAIT À TORONTO LE                    JOUR DE

REGISTRAR                    GREFFIER

Electronically issued / Délivré par voie électronique : 14-Sep-2023
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-23-00706033-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF BIOSTEEL SPORTS NUTRITION INC.

Court File No. CV-23-706033-00CL

|  | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>PROCEEDING COMMENCED AT<br>TORONTO |
|---|---|
|  | **INITIAL ORDER** |
|  | **Cassels Brock & Blackwell LLP**<br>Suite 3200, Bay Adelaide Centre – North Tower<br>40 Temperance St.<br>Toronto, ON M5H 0B4<br><br>**Ryan Jacobs LSO#: 59510J**<br>Tel:   416.860.6465<br>rjacobs@cassels.com<br><br>**Shayne Kukulowicz LSO#: 30729S**<br>Tel:   416.860.6463<br>skukulowicz@cassels.com<br><br>**Natalie E. Levine LSO#: 64908K**<br>Tel:   416.860.6568<br>nlevine@cassels.com<br><br>**Jeremy Bornstein LSO#: 65425C**<br>Tel:   416.869.5386<br>jbornstein@cassels.com<br><br>Lawyers for the Applicant |